TRANS WORLD AIRLINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent.

No. 592, Docket 75–4169.

United States Court of Appeals, Second Circuit.

Argued March 25, 1976.

Decided Oct. 6, 1976.

Robert M. Lichtman, Washington, D. C. (Robert E. Nagle, and Lichtman, Abeles, Anker & Nagle, P. C., Washington, D. C., on the brief), for intervenors National Air Carrier Association, Inc., Capitol International Airways, Inc., Overseas National Airways, Inc., Saturn Airways, Inc., Trans International Airlines, Inc. and World Airways, Inc.

Richard P. Taylor, F. Joseph Nealon, and Steptoe & Johnson, Washington, D. C., filed a brief for intervenor Evergreen International Airlines, Inc.

Michael A. Katz and J. E. Murdock, III, Chicago, Ill., filed a brief for United Air Lines, Inc., amicus curiae.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this petition to review a rule of the Civil Aeronautics Board (CAB), the central question is whether the air transportation services authorized by the new rule constitute bona fide "charter trips" within the meaning of Section 101(36) of the Federal Aviation Act, 49 U.S.C. § 1301(36) (Supp. IV, 1974) (the Act). We hold that they are charter trips within the meaning of the Act. We deny the petition to review.

Harold L. Warner, Jr., New York City (Carl S. Rowe, Henry J. Oechler, Jr., and Chadbourne, Parke, Whiteside & Wolff, New York City, on the brief), for petitioner TWA.

Alan R. Demby, Atty., CAB, Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., B. Barry Grossman and Catherine O'Sullivan, Attys., Dept. of Justice, Washington, D. C., Jerome Nelson, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, Litigation, CAB, Washington, D. C., on the brief), for respondent CAB.

I.

On August 7, 1975, after notice and comment, the CAB adopted a new rule, Regulation SPR–85, 14 C.F.R. § 378a (1976) (the regulation). It authorized, on an experimental basis, a new type of air travel charter to be known as the "One-stop-inclusive Tour Charters" (OTC's), effective September 13, 1975. The regulation authorized United States scheduled and supplemental (charter)[1] air carriers to carry charter groups under certain terms and conditions referred to below.

1. Section 401(d) of the Act, 49 U.S.C. § 1371(d) (1970), creates an important distinction between scheduled air carriers, which are authorized to provide regular service between fixed points, and supplemental carriers, which are authorized to engage only in "supplemental air transportation". The latter is defined as:

"charter trips, including inclusive tour charter trips, in air transportation, other than the transportation of mail by aircraft, rendered pursuant to a certificate of public convenience and necessity issued pursuant to section 1371(d)(3) of this title to supplement the scheduled service authorized by certificates

Previously the CAB had authorized several other types of charter services. Each was more restricted than that authorized by the instant regulation. The best known previous charter service was the "affinity group" charter.[2] This allowed certain groups to charter a plane to carry their members and immediate families. To insure that only legitimate members of the affinity groups and their families utilized such service, the groups were required to limit themselves to persons who had been members for six months or more. This requirement proved very difficult to enforce. The prior-membership requirement was easily evaded by ignoring it, by providing backdated documentation, or by other means. See *CAB v. Carefree Travel, Inc.,* 513 F.2d 375 (2 Cir. 1975). This practice was stimulated by the economic advantages which charter trips provide for those who are willing to put up with some inconvenience and rigidity in travel planning.

The CAB in recent years has attempted to provide additional categories of charter service for all members of the public. Its reasons for providing such additional service were that many people were not members of affinity groups large or vigorous enough to arrange for charters; many people were unwilling to resort to the ruses necessary to circumvent the six-month membership requirement; and the widespread disregard for an unpopular regulation in itself was undesirable.

Prior to promulgation of the instant regulation, the CAB had authorized two other categories of charter service in an effort to attain its goal: Inclusive Tour Charters (ITC's)[3] and Travel Group Charters (TGC's).[4] Neither had any prior-member-

of public convenience and necessity issued pursuant to sections 1371(d)(1) and (2) of this title. Nothing in this paragraph shall permit a supplemental air carrier to sell or offer for sale an inclusive tour in air transportation by selling or offering for sale individual tickets directly to members of the general public, or to do so indirectly by controlling, being controlled by, or under common control with, a person authorized by the Board to make such sales." 49 U.S.C. § 1301(36).
Petitioner Trans World Airlines is a scheduled carrier, as is United Air Lines. The latter, which is the largest domestic air carrier, has filed an amicus brief in support of the new regulation. All of the intervenors are supplemental carriers. Both scheduled and supplemental carriers are authorized to furnish OTC charter service.

2. Provisions governing affinity group charters are set forth in 14 C.F.R. §§ 207, 208, 212, 214 (1976). Typical affinity groups are labor unions, alumni groups and organizations of retired persons. See generally *CAB v. Carefree Travel, Inc.,* 513 F.2d 375 (2 Cir. 1975).

3. Provisions governing Inclusive Tour Charters are set forth in 14 C.F.R. § 378 (1976). An ITC tour package must include stopovers in at least three cities; its tour must last a minimum of seven days; it must be sold as one package, with air and surface travel and hotel accommodations included in the price; and the price for the total package must be at least 110% of the lowest fare charged by a scheduled air carrier for comparable individually ticketed travel. The ITC concept was sustained with respect to

domestic ITC's by the Court of Appeals for the District of Columbia Circuit. *American Airlines, Inc. v. CAB,* 365 F.2d 939 (D.C.Cir. 1966). Our Court, in a separate review proceeding, held that the CAB had exceeded its statutory powers in authorizing foreign ITC's. *Pan American World Airways, Inc. v. CAB,* 380 F.2d 770 (2 Cir. 1967), *aff'd per curiam by an equally divided Court,* 391 U.S. 461 (1968). In response to the latter decision, Congress expressly authorized foreign ITC's in an amendment to the Act which is now 49 U.S.C. § 1301(36).

4. Provisions governing Travel Group Charters are set forth in 14 C.F.R. § 372a (1976). A TGC tour package must include at least forty persons; the trip must last a minimum of seven days if it is confined to North America and ten days if it extends elsewhere; all charter participants must sign up and pay for the trip sixty days in advance of departure; and all participants must bear a pro rata share of the actual charter costs, with the result that each participant assumes the risk of increased costs in the event of default by any other participant. The TGC concept was sustained by the Court of Appeals for the District of Columbia Circuit. *Saturn Airways, Inc. v. CAB,* 483 F.2d 1284 (D.C.Cir. 1973).
There are other categories of charters of limited utility to the general public, e. g., "study group charters" (14 C.F.R. § 373), "overseas military personnel charters" (14 C.F.R. § 372), "single-entity charters" (14 C.F.R. § 208.300), and "foreign-originating travel group charters", known as TGC/ABC's (14 C.F.R. § 372a.60).

ship requirement. They did not meet with the success contemplated by the CAB, however, because of certain other restrictions such as the length of the charter, prior payment and mandatory multiple stopovers.

Against this background, the CAB promulgated the instant regulation in an effort further to liberalize the availability of charter service. The regulation represents another step in the CAB's continuing effort to create appropriate alternatives to affinity group charters.

In its petition to review, TWA urges that the new regulation be set aside essentially because it claims that the regulation goes so far in making charter service available to members of the general public that it amounts to an improper authorization for non-scheduled supplemental carriers to provide "individually ticketed travel"[5]—a function which the Act assigns exclusively to scheduled carriers, not to supplemental carriers. We disagree.

## II.

The issue thus presented by the instant petition to review is but another facet of statutory construction arising under the Federal Aviation Act which has occupied the attention of the courts, including ours, in numerous recent cases. As aptly stated by the Court of Appeals for the District of Columbia Circuit, "[The issue of statutory construction] grows out of the protracted and absorbing battle over the years between the regularly scheduled airlines and the so-called 'supplemental' airlines".[6] Supplemental carriers cannot compete directly for the business of individual passengers. Instead they depend on commercial intermediaries such as tour packagers and affinity groups. They therefore favor initiatives by the CAB to make charter service more available and attractive to the travelling public. Scheduled carriers, on the other hand, must provide regular service over fixed routes regardless of the number of passengers on any given trip. Understandably, they do not favor changes in industry regulations which threaten to divert traffic from existing services.

■ Hardly a year ago we discussed at length the federal statutory scheme governing air transportation and the considerations which determine whether a particular charter innovation is within the CAB's authority. *Pan American World Airways, Inc. v. CAB,* 517 F.2d 734 (2 Cir. 1975). We believe that the principles which we enunciated in that case are controlling here. Congress intended "charter" to be a flexible term which the CAB is free to define in accordance with experience and changing circumstances as long as the integrity of scheduled service traffic is not vitiated. We hold that the instant OTC regulation does not constitute an impermissible authorization for supplemental carriers to sell individually ticketed service. Rather, the CAB was reasonable in concluding that the various requirements which restrict the availability of OTC's are adequate to "maintain the required distinction between charter services and that of the regularly scheduled airlines." *Pan American World Airways, Inc. v. CAB, supra,* 517 F.2d at 746.

■ Specifically, under the OTC regulation supplemental carriers may not deal directly with individual members of the public. Their business must come from independent travel representatives who decide to charter plane service and then solicit passengers on their own. Moreover, the OTC regulation requires that each passenger buy, in addition to air transportation, a

The regulation authorizing the latter was sustained by our Court in *Pan American World Airways, Inc. v. CAB,* 517 F.2d 734 (2 Cir. 1975).

**5.** The amendment to the Act, 49 U.S.C. § 1301(36), authorizing foreign ITC's expressly provided that supplemental air carriers, while authorized to carry ITC passengers, were not permitted to "sell or offer for sale an inclusive

tour . . . by selling or offering for sale individual tickets directly to members of the general public . . . ." See notes 1 and 3, *supra.*

**6.** *American Airlines, Inc. v. CAB, supra,* 365 F.2d at 940; see also *Saturn Airways, Inc. v. CAB, supra,* 483 F.2d at 1286.

package of services on the ground at the destination. This package must include lodging. It must cost no less than $15 a day per person. Other requirements under the OTC regulation include minimum duration provisions (four days if confined to North America, otherwise seven days); a requirement that the group travel together and without intermingling on all air journeys and surface connections; a minimum group size of forty persons; and an advance booking and pre-payment requirement (no later than fifteen days before departure for OTC's confined to North America, thirty days for other OTC's).

In *Pan American World Airways, Inc. v. CAB, supra,* 517 F.2d at 742, we held that CAB regulations relating to chartered air service must be "[v]iewed as a whole" and considered in terms of their "cumulative effect", citing *Saturn Airways, Inc. v. CAB, supra.* We hold that the instant OTC regulation properly maintains the distinction between charter and individual ticketing. The many vacationers who wish to set their own travel itineraries will be likely to continue to buy individual tickets on scheduled airlines, since on an OTC charter a vacationer must purchase a package of ground services, the non-use of which would reduce if not obliterate any charter price advantage, and he must travel with the group. For similar reasons, and also because of the advance booking and minimum duration requirements, business travelers, who quite possibly are the principal year-round users of scheduled airlines, are unlikely to find OTC charters to be acceptable alternatives.

 The fact that the charter/individual ticket distinction will be maintained does not mean that competition for air passengers between the supplemental and scheduled carriers will not be somewhat enhanced by the availability of OTC charters. Such competition, however, far from being prohibited under the Act, is to be encouraged as "the highest and best definition of both our national and consumer interest." *Pan American World Airways, Inc. v. CAB, supra,* 517 F.2d at 743–44, quoting *National Air Carrier Association v.*

*CAB,* 442 F.2d 862, 871 (D.C.Cir. 1971). Moreover, although the effect of OTC availability can only be "tested in the crucible of the marketplace", it has been said that "the consistent lamentations and predictions of doom by diversion raised by the scheduled air carriers in the past have proved . . . to be considerably overstated." *Saturn Airways, Inc. v. CAB, supra,* 483 F.2d at 1291–92. While our approval of the instant OTC regulation should by no means be taken to mean that each CAB expansion of the charter concept will receive automatic approval by our Court, the CAB does have both the power and the obligation to experiment with different types of charters in order better to serve "the public interest in low cost travel." *Pan American World Airways, Inc. v. CAB, supra,* 517 F.2d at 746.

Petition denied.